UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20496-CR-MARTINEZ/MCALILEY

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THOMAS PATRICK KEELAN,

        Defendant.

_____/

## REPORT AND RECOMMENDATION
## REGARDING RESTITUTION

Defendant, who was convicted after trial by jury earlier this year, has been sentenced in all respects, with the exception of the matter of restitution. The government asks that Defendant be ordered to pay restitution in the amount of $110,591.05, to the parents of the minor victim, pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, *et seq.* Defendant responds that the victim's parents are not entitled to that restitution. The Honorable Jose E. Martinez referred the matter to me, for a report and recommendation. [DE 116]. For the reasons set forth below, I recommend that the Court order Defendant to pay restitution in the amount of $104,886.05.

I.     **Background**

On January 25, 2013, Defendant was convicted of two counts of violating 18 U.S.C. § 2422(b), which proscribes the inducement, enticement or coercion of a minor to engage in sexual activity that violates state law. [DE 7, 93]. These charges arose from Defendant's

unlawful sexual relationship with a 10th grade student, that began when Defendant was that minor's teacher. The evidence at trial established that Defendant began grooming the minor for a sexual relationship in the Fall of 2009, and that sexual relationship began on February 14, 2010. [DE 137, p. 40; DE 155, pp. 43-7]. The relationship continued for over a year, until the minor victim's parents uncovered evidence of the relationship, and sent the victim out of state for treatment. [DE 132, pp. 257-9].

The minor victim's parents incurred considerable expense providing their son with psychological counseling and services, beginning in November 2009, when their son exhibited serious behavioral and emotional difficulties, but before Defendant's unlawful behavior came to light. The treatment that is the subject of the government request for restitution ended on September 20, 2012. [DE 159-18, p. 1]. As already noted, the total cost of the treatment and related expenses, for which restitution is sought, is $110,591.05.

At the April 11, 2013 sentencing hearing, the government asked that the Court continue that hearing to a later date, to consider the question of restitution. [DE 137, pp. 49-50]. The Court held a separate restitution hearing on April 18, 2013, [DE 115], at which Defendant, for the first time, disputed both entitlement to restitution under 18 U.S.C. § 3663A, and the amount of restitution sought. At that point, Judge Martinez decided to refer the matter to me.

On August 7, 2013, I held an evidentiary hearing on the issue of restitution. For the reasons set forth below, I recommend that the Court order Defendant to pay restitution in an

amount that compensates the victim's parents for the treatment and related expenses they

incurred after February 14, 2010; the date the unlawful sexual relationship began.

## II.    Analysis

The Mandatory Victim Restitution Act (MVRA) provides, *inter alia*, that a court must

order a defendant to pay restitution to the victim of a "crime of violence", as that is defined

in 18 U.S.C. § 16.  *See* 18 U.S.C. §§3663A(a) and (c).  A "victim" under the MVRA is

defined, somewhat circularly, as "a person directly and proximately harmed as a result of the

commission of an offense for which restitution may be ordered."  18 U.S.C. §3663A(a)(2)

The MVRA requires, "in the case of an offense resulting in bodily injury to a victim"

that the defendant "pay an amount equal to the cost of necessary medical and related

professional services and devices relating to physical, psychiatric, and psychological care,

including nonmedical care and treatment rendered in accordance with a method of healing

recognized by the law of the place of treatment." 18 U.S.C. § 3663A(b)(2)(A).  Where the

victim is "under 18 years of age . . . the legal guardian of the victim . . . may assume the

victim's rights under this section . . . ." 18 U.S.C. §3663A(a)(2).[1]

Thus, in this instance, before Defendant can be ordered to pay restitution under the

MVRA, the government must show that: (1) Defendant committed a "crime of violence,"

(2) that resulted in bodily injury to the minor victim, and that (3) the restitution sought was

for necessary psychiatric and psychological care to treat harm directly and proximately

---

[1] Defendant does not dispute that the minor victims' parents can stand in his shoes to recover under the MVRA.

3

caused by Defendant's criminal offense.  I address each element in turn.

## A.    Defendant was convicted of a "crime of violence"

The MVRA applies here if Defendant's offense was a "crime of violence," as defined in 18 U.S.C. § 16.  *See* 18 U.S.C. §3663A(c)(1)(A)(I).  Section 16 defines a "crime of violence" as "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 16.

Subsection (a) is not applicable here, because § 2422(b), the statute under which Defendant was convicted, does not have as an element the attempted, threatened or actual use of physical force.  Thus, the MVRA applies in this case only if § 2422(b) falls within the definition of "crime of violence" found in subsection (b), often referred to as the "residual clause."

The Eleventh Circuit has not resolved whether § 2422(b) is a "crime of violence" under § 16(b).  It has held, however, that § 2422(b) is a "crime of violence" under the residual clause of § 4B1.2 of the Sentencing Guidelines.  *United States v. Searcy*, 418 F.3d 1193, 1198 (11th Cir. 2005) (finding that "persuasion, inducement, enticement or coercion of a minor to engage in unlawful sexual activity carries an inherent risk of physical injury to the minor.").  It is significant that the residual clause under § 4B1.2 is strikingly similar to

the residual clause in § 16(b).[2] Recognizing this, the Eleventh Circuit has held that there is

no "substantial difference that requires a different decision between the definition of a crime

of violence under 18 U.S.C. section 16 . . . and the definition of a crime of violence for career

offender purposes under the sentencing guidelines . . . U.S.C.G. § 4B1.2." *U.S. v.*

*Rutherford*, 175 F.3d 899, 905 (11th Cir. 1999).

   In sum, in this Circuit: (1) § 2422(b) is a "crime of violence" under the § 4B1.2, and

(2) there is no meaningful distinction between the definitions of a "crime of violence" under

§ 16, and under § 4B1.2. With this in mind, I find that § 2422(b) is a "crime of violence" as

defined by § 16 and, thus is a "crime of violence" within the meaning of the MVRA.[3] With

this reasoning, I find the government has satisfied the first element.

   **B.**     **The minor victim suffered bodily injury**

   The MVRA can apply here only if this is "the case of an offense resulting in bodily

injury to a victim." 18 U.S.C. § 3663A(b)(2). The MVRA does not define the term "bodily

injury," but other federal statutes define it to include: "(a) a cut, abrasion, bruise, burn or

disfigurement; (b) physical pain; (c) illness; (d) impairment of the function of a bodily

---

   [2] The residual clause of § 4B1.2(a) defines a "crime of violence" as "any offense under federal or state law, punishable by a imprisonment for a term exceeding one year, that . . . otherwise involves conduct that presents a *serious potential risk of physical injury to another.*" By comparison, the residual clause found in 18 U.S.C. § 16(b), concerns a felony "that, by its nature, involves a *substantial risk that physical force against the person . . . of another may be used* in the course of committing the offense." (emphasis added).

   [3] I reject Defendant's argument, based on law from other Circuits, that a the definition of a "crime of violence" defined in § 16 is more narrow than that stated in § 4B1.2. [DE 149, pp. 3-5].

5

member, organ, or mental faculty; or (e) any other injury to the body, no matter how temporary." *See* 18 U.S.C. §§ 1365(h)(4) and 1515(a)(5). I consider it reasonable for this Court to rely upon this definition of bodily injury.

The testimony at trial established that the minor victim suffered physical pain as part of his sexual relationship with Defendant. [DE 132, p. 245; DE 133, pp. 49, 86-7]. Thus, under the definition of bodily injury stated above, the government has shown that the minor victim suffered "bodily injury."

Defendant contends, however, that in order to recover under the MVRA, the government must show that the bodily injury gave rise to the need for treatment. [DE 149, p. 8]. Defendant's construction of the statute is contrary to its plain language. Specifically, the MVRA provides that "in the case of an offense resulting in bodily injury to a victim," the perpetrator must "pay an amount equal to the cost of necessary *medical and related professional services . . .relating to physical, psychiatric, and psychological care, including nonmedical care and treatment . . . .*" 18 U.S.C. § 3663A(b)(2)(A) (emphasis added). The statute does not limit restitution to medical and psychological services that treat only the bodily injury itself. Rather, it mandates restitution for "necessary medical and related services", specifically including psychological and other nonmedical care. I find Defendant's effort to narrow the scope of the statute to be without merit.

### C.   Expenses that directly and proximately resulted from the offense

Last, restitution may be ordered only for those losses that directly and proximately

resulted from Defendant's unlawful conduct.  18 U.S.C. § 3663A(a)(2).  In this Circuit, to satisfy this requirement:

> The government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either factually of temporally).  Defendant's conduct need not be the sole cause of the loss, but any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct.

*United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007).

The victim's parents first sought psychologic treatment for their son in November 2009.  [DE 159-1].  Although the victim had been struggling before that time, his emotional and behavioral difficulties became so problematic in the Fall of 2009, that it caused his parents to insist that he receive counseling.  The government asks that the Court order Defendant to compensate the victim's parents for the cost of psychiatric and psychological treatment they provided their son, starting in November 2009.[4]  The government correctly points out that the crime for which Defendant was convicted was his inducement of the victim to engage in unlawful sexual activity, that this inducement was underway in the Fall of 2009, and that Defendant's grooming behavior was harmful to the victim.

In the Fall of 2009, the victim's emotional and behavioral difficulties arose for a number of reasons.[5]  Given the variety of reasons why the victim needed counseling in

---

[4] Those costs, and the services provided, are documented in Government Exhibit 1, filed under seal at DE 159.

[5] Before he met Defendant, the adolescent victim struggled with questions about his identity that arose from his adoption, his family's orthodox Jewish faith and questions about his own

November of 2009, I find that the government has not established that, as of that date, Defendant's unlawful conduct was the direct and proximate cause of the victim's need for psychological services.

Applying the standard set forth in *Robertson* to the evidence in the record, I find that the government can clearly establish that Defendant's unlawful conduct was the direct and proximate cause of the victims's need for therapeutic treatment as of February 14, 2010, the date when Defendant's sexual abuse of the victim began. At that point, there can be no doubt that the troubles the victim experienced before he met Defendant became secondary to Defendant's highly predatory and manipulative treatment of the victim.

The evidence at trial supports this conclusion. The victim was 15 when he met Defendant, and was sexually inexperienced. [DE 132, p. 219; DE 133, p. 102]. As his relationship with Defendant advanced, the victim's behavior continued to deteriorate, despite counseling with local therapists, to the point that his parents sent him to residential therapy out-of-state for approximately a year. [DE 132, pp. 257-9].

Before that time, the minor victim denied to his parents and law enforcement any illegal relationship with Defendant. [*Id*]. It was not until he was in residential treatment in Georgia, and away from Defendant, that the victim was able to recognize the inappropriate and destructive nature of their relationship, and to reveal this to a therapist. [DE 132, pp.

---

sexuality. Indeed, at trial, the government's expert testified that these emotional difficulties help explain why Defendant targeted the victim, and why the victim was vulnerable to Defendant's advances. [DE 132. pp. 188-9].

259; DE 133, p. 25; DE 159-15, p. 2]. Based on the recommendation of his therapist, the victim continued his therapy at a residential treatment facility in Texas, where he graduated from high school. [DE 159-15, p. 3; DE 159-16]. He also participated in a brief, intensive therapeutic program in Arizona. [DE 159-17]. After graduating and returning to Miami, the victim continued to receive therapy to address the harm caused by Defendant's abuse. [DE 159-18]

The government provided narratives and summaries from each doctor or institution for which it asks for restitution, as well as a resume for each service provider. [DE 152; DE 159]. Defendant did not object to the admission of these exhibits into evidence,[6] although he did argue that the government did not establish that Defendant proximately caused each treatment. [DE 155, pp. 55, 70-6].[7] I do not agree with Defendant, and summarize here some of the documentary evidence that, taken together, shows a direct and proximate relationship between each of the treatments provided and Defendant's criminal conduct:

1.      Norman Goldwasser, Ph.D., a psychologist who treated the minor victim from November 5, 2009, through November 24, 2010, noted that the victim had a marked change in attitude towards his school, and concludes: "Although it cannot be definitively established

---

[6] Notably, the Rules of Evidence, except for those concerning claims of privilege, do not apply to sentencing proceedings. F.R.E. 1101(d)(3).

[7] Defendant also asked that if the Court orders restitution, that it permit Defendant to make nominal periodic payments, as he is unable to pay the award the government seeks. [DE 155, p. 77; citing 18 U.S.C. § 3664(f)(3)]. This is a matter that Defendant can raise with the Court, in the event restitution is ordered.

that these symptoms were as a direct result of sexual abuse by a teacher, the collective pattern of changes in behavior and personality, as well as attitude, and social interaction, are consistent with what is typically observed in adolescents who have sexually abused." [DE 159-11].

2.      Dr. Jon A. Shaw, the psychiatrist who treated the minor victim from January 7, 2010 through September 22, 2010, at a time when the victim refused to admit to the on-going sexual abuse by Defendant: "It is apparent in retrospect that a continuous thread in his psychological presentation and suicidal ideation was related to his sexual involvement with an adult." [DE 159-11].

3.      Steven Gold, Ph.D., a psychologist, treated the minor victim from April 14, 2011 through May 31, 2011, at a time when the victim refused to admit to the on-going sexual abuse by Defendant: "[the victim's] parents sought therapy for him because they were concerned that he was being sexually abused. . . . The parents informed me that they had already reported the suspected offence to the police and that the case was being investigated. As is often the case when an adolescent has been sexually molested by an adult, [the victim] explicitly denied that sexual contact had taken place and was overtly sympathetic toward and protective of the alleged offender." [DE 159-14].

4.      The first residential treatment facility was Second Nature, in Georgia, where the minor victim was treated from July 11, 2011 through October 26, 2011.  It was during this therapy that the victim admitted the abuse: "[The victim] reported a long history of

10

sexual abuse by his teacher Thomas Keelan and other adult male pedophiles. . . . Recovery and rehabilitation from such abuse was a significant focus of the therapeutic service offered by Second Nature Blue Ridge and was a key component of the treatment plan. . . . [The victim] displayed continued difficulty dealing with the effects of the abuse, and will need to address this issue further in future treatment. . . . I believe that if long-term gains are to be made, he must be in a residential or therapeutic boarding school setting after Second Nature . . . . Therapy also needs to continue to focus on helping Jacob address the issues surrounding the sexual abuse suffered at the hands of his teacher, Thomas Keelan as well as other male pedophiles he was involved with." [DE 159-15].

      5.     The minor victim then attended a residential treatment facility in Texas, The High Frontier, where he was a student from October 26, 2011 through April 26, 2012,: "I was [the victim's] individual and group therapist throughout his stay, and I can attest that [his] history of sexual abuse by his teacher, Thomas Keelan, was a primary topic throughout his therapy, as well as a primary cause for him to need therapy in the first place." [DE 159-16].

      6.     The victim also attended intensive outpatient treatment at Psychological Counseling Services, Ltd. in Arizona from March 11, 2012 through March 16, 2012: "after allegedly being groomed and molested by one of his high school teachers. After this teacher moved to a different state, [the victim] sought out other pedophiles online with whom he could subject himself to sex and further molestation. . . . Eroticized rage was discussed and

11

how he engaged in masochistic behavior as a continuation and trauma reenactment of his abuse. The connection between being a victim and then later becoming victimizer was reviewed." [DE 159-17].

      7.     After returning to Miami, the victim, was treated at NeuroMind, P.A., from June 29, 2011, through September 20, 2012: "Services began on 06/29/11, due to specific issues related to [the victim's] history of sexual molestation and abuse. Treatment was implemented in an attempt to help [the victim] and his family process their emotional and mental health issues that were a direct result of this patient's past trauma." [DE 159-18].

     A careful review of these reports, and the trial testimony, leave me with a firm conviction that the treatment sought by the victim's parents from February 2010 through September 2012, was directly and proximately caused by Defendant's criminal behavior. Each of the treatment providers states that the sexual abuse by Defendant was prime cause for the necessary treatment. Moreover, these reports indicate that, to the extent that the minor victim engaged in self-destructive behavior with other adult male predators, these activities occurred only after he was abused by Defendant, and were a reasonably foreseeable result of Defendant's abuse. *See Robertson*, 493 F.3d at 1335 (proximate cause requirement still satisfied if intervening cause that harmed victim was a reasonably foreseeable consequence of the criminal acts).

     In summary, I find that the government has sufficiently establish that Defendant's crime was the direct and proximate cause of the mental health and related services provided

after February 14, 2010, for which the victim's parents seek recovery under the MVRA. The total costs incurred by the minor victim's parents for psychological treatment that occurred after February 14, 2010, is $105,086.05. [*See* DE 154]. The statement from NeuroMind, P.A. indicates two sessions after September 2012 that the therapist stated did not include the victim. [DE 159-18]. The total of $200.00 charged for these sessions should be disallowed. Thus, the total restitution awarded should be $104,886.05.

### III.    Recommendation

Based on the foregoing, I RESPECTFULLY RECOMMEND that

The Court order Defendant to pay $104,886.05 in restitution, pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. 3663A.

### IV.    Objections

The parties may file written objections to this Report and Recommendation with the Honorable Jose E. Martinez within **fourteen days** of the date of this Report and Recommendation. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers in Miami, Florida this 29th day of October, 2013.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

13

cc:
The Honorable Jose E. Martinez
Counsel of record